UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

LORRAINE MANATT,

    Plaintiff,

v.

STATE OF NEVADA, ex rel. its Department of Business and Industry, Division of Industrial Relations a governmental entity,

    Defendant.

3:10-cv-00505-LRH-VPC

ORDER

Before the court is Defendant's motion for summary judgment. Doc #24[1]. Plaintiff Lorraine Manatt filed an opposition Doc. #32, and Defendants replied. Doc. #37.

## I.  Facts and Procedural History

This is an employment discrimination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3(a).  On April 2, 2008, Lorraine Manatt ("Manatt"), then an employee of Defendant Nevada Department of Business and Industry, Division of Industrial Relations, Mine Safety and Training Section ("DIR"), witnessed a federal agency trainer show an allegedly discriminatory videotape to State employees during a break in a meeting intended to provide information about mine training forms.

---

[1] Refers to the court's docket entry number.

Manatt filed a State of Nevada Sexual Harassment or Discrimination Complaint on May 9, 2008, to report the videotape incident and other alleged misconduct by the Chief Administrative Officer of the Nevada Mine Safety and Training Section, Ed Tomany. Following the filing of the complaint, Manatt asserts that her direct supervisor, Jeff Bixler, engaged in retaliatory behavior and made the workplace environment intolerable. Manatt subsequently took extended periods of stress and medical leave and eventually resigned from her position in October of 2009.

On August 13, 2010, Manatt filed this action against DIR asserting a Title VII retaliation claim and a violation of her equal protection rights under 42 U.S.C. § 1983. Doc. #1. Manatt claims that she resigned because of the mistreatment she suffered after filing her Title VII protected work complaint. Manatt alleges that she was not allowed to use essential laboratory equipment, that she was required to complete daily logs of her activities, that she received unwarranted disciplinary reprimands, and that her relationship with her superior became hostile. DIR now moves for summary judgment.

## II.     Legal Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could

find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the plaintiff. *See id.* at 252.

### III. Discussion

#### A. Title VII Retaliation Claim

Under Title VII's anti-retaliation provision, it is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). Manatt alleges that her supervisor made the work environment intolerable for her in retaliation against her complaint about a racist video shown at a staff meeting. "To make out a prima facie case of retaliation, a plaintiff must demonstrate that '(1) she engaged in an activity protected under Title VII; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action.'" *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994)). "If a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to

demonstrate a legitimate, nondiscriminatory reason for its decision." *Id*. "If the defendant demonstrates such a reason, the burden shifts back to the plaintiff to show that the defendant's reason was a mere pretext for discrimination." *Id*.

The first prong of a prima facie case of retaliation requires a plaintiff to show that she had a reasonable belief that the employment practice she protested was prohibited under Title VII. *Trent v. Valley Electric Ass'n*, 411 F.3d 524, 526 (9th Cir. 1994). Here, Manatt asserts that her complaint about the alleged discriminatory video shown in the workplace was the root cause of the adverse employment action. DIR argues that Manatt has failed to sufficiently allege in her complaint that she engaged in an activity protected under Title VII, yet an employee's complaints about the treatment of others is considered a protected activity even if the discrimination complained about is not legally cognizable. *See Ray*, 217 F.3d at 1240 n.3. Thus, Manett's allegations are sufficient to satisfy the first prong of Title VII retaliation under 42 U.S.C. § 2000e-3(a).

DIR also argues that Manatt's claim fails because there is insufficient evidence to satisfy the second and third elements of a prima facie case of Title VII retaliation -- an adverse employment action and a causal link between the Title VII protected complaint and that adverse employment action. The Ninth Circuit broadly construes the type of behavior that can be considered adverse employment action. "The EEOC has interpreted 'adverse employment action' to mean 'any adverse treatment that is based on retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity.'" *Ray*, 217 F.3d at 1243-44 (citing EEOC Compliance Manual Section 9, "Retaliation," ¶ 8008 (1998)). Here, Manatt was not discharged by her employer as a result of her complaint. A wide array of disadvantageous changes in the workplace may constitute adverse employment actions, however.

Manatt asserts that she was ostracized from meetings, that her supervisor's door was kept shut when it had previously been kept open, that she received undue reprimands, that her desk was moved to a new and unsatisfying location, that she was disallowed from using essential laboratory

1  equipment, and that she was forced to create daily logs of her activities. Mere ostracism by co-
2  workers does not constitute an adverse employment action. *Id.* at 1241 (citing *Strother v. S. Cal.*
3  *Permanente Med. Grp.*, 79 F.3d 859, 869 (9th Cir. 1996)). This series of alleged actions taken
4  together, however, could constitute adverse employment action sufficient to deter individuals from
5  pursuing a Title VII complaint *if* the Title VII complaint is shown to be the cause of the adverse
6  employment action.

7        Here, Manatt has not provided sufficient evidence to show that the adverse employment
8  action was the result of her Title VII protected activity. Two of the alleged adverse employment
9  actions pre-date the alleged discriminatory video and Manatt's protected complaint. On March 19,
10 2008, Manatt's supervisor reminded her of the policy requiring daily work logs from employees.
11 Doc. #24-1, Exh. B at 9. Additionally, Manatt was limited to supervised use of the essential
12 laboratory equipment on March 24, 2008. Doc. #24-1, Exh. B at 26. These actions are
13 inappropriate for consideration of the employer's adverse action against Manatt as a result of her
14 Title VII protected activity because they occurred before May 9, 2008 -- the date she submitted her
15 hostile work environment claim.

16       For those adverse employment actions that occurred after the alleged discriminatory video
17 and Manatt's protected complaint, none bear sufficient indicia that they resulted from her protected
18 complaint. Manatt relies upon the temporal proximity between the complaint and the adverse
19 employment actions, yet nearly fourteen months passed between the date her superiors were made
20 aware of her complaint and the date she decided to resign from her position.

21       Additionally, even viewing temporal proximity in light of her time off, DIR has shown
22 legitimate, nondiscriminatory reasons for its behavior towards Manatt and Manatt has failed to
23 show that these reasons are mere pretext. To prove that the defendant's proffered reason is a
24 pretext for discrimination, the plaintiff must show "*both* that the reason was false, *and* that
25 discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

26

DIR provides evidence that Manatt's desk was moved in order to limit chit-chat and increase productivity. *See* Doc. #32-2, Exh. 3 at 38. DIR also provides evidence that the supervisor's door was closed in order to secure the social security numbers and telephone numbers stored within his office. *See* Doc. #32-2, Exh. 3 at 44. Furthermore, DIR provides evidence that Manatt was written up for her argument with her co-worker because of her refusal to explain what had happened. *See* Doc. #32-2, Exh. 3 at 37.

Manatt has relied upon temporal proximity to support an inference that she faced retaliation for her Title VII protected activity, yet the record does not support this inference. Manatt has failed to provide any evidence that DIR's reasons for adverse employment action against her were pretextual, let alone the "specific and substantial" evidence that is required. *See Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998)). Summary judgment is therefore appropriate.

### B. Equal Protection Claim

Manatt's complaint alleges that DIR violated her right to equal protection under 42 U.S.C. § 1983. Manatt previously raised the same equal protection claim in a prior case, No. 3:09-cv-00724-LRH-VPC, which was dismissed with prejudice. *See* Doc. 24-1, Exh. A at 2. Manatt does not dispute this fact. Accordingly, this claim is barred by *res judicata*.

IT IS THEREFORE ORDERED that Defendant's motion for summary judgment (Doc. #24) is GRANTED. The clerk of court shall enter judgment accordingly.

IT IS SO ORDERED.

DATED this 6th day of July, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE